UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CESAR TELLO VARGAS,
LEANDRO RIVERA
    *individually and on behalf of all others similarly situated,*

                                Plaintiffs,

              -against-                               **MEMORANDUM AND ORDER**
                                                                    17-CV-7385-PKC-SJB

BAY TERRACE PLAZA LLC,
    *d/b/a Allora Italian Kitchen & Bar,*
STEVE MENEXAS,
DANIEL STEINBERGER,

                                Defendants.
-----------------------------------------------------------------X
**BULSARA, United States Magistrate Judge:**

       Plaintiffs Cesar Tello Vargas ("Vargas") and Leandro Rivera ("Rivera") (collectively, "Plaintiffs") commenced this action on behalf of themselves and others similarly situated against Bay Terrace Plaza LLC ("Bay Terrace"), Steve Menexas ("Menexas"), and Daniel Steinberger ("Steinberger") (collectively, "Defendants") on December 19, 2017 alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). (Compl. dated Dec. 19, 2017, Dkt. No. 1). On October 16, 2018, Defendants filed a motion to compel arbitration and requested to stay the proceedings under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). (*See* Mot. to Compel Arbitration dated Oct. 16, 2018, Dkt. No. 25 ("Defs.' Mot.")). For the reasons described below, the Court grants Defendants' motion to compel arbitration and to stay these proceedings.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Vargas and Rivera are both residents of Jackson Heights, New York and former employees of Bay Terrace, a restaurant corporation doing business as Allora Italian Kitchen & Bar. (Compl. ¶¶ 8-10). Both Vargas and Rivera served in miscellaneous positions at Bay Terrace, including as food runners, bussers, and cleaners, from around April 2017 to July 2017 and November 2016 to July 2017, respectively. (*Id.* ¶¶ 32, 40).

Bay Terrace is a New York corporation located at 210-35 26th Avenue, Bayside, New York 11360. (*Id.* ¶ 10). According to the Complaint, it is "an enterprise engaged in interstate commerce within the meaning of the FLSA" because its annual gross sales exceed $500,000 and its employees are engaged in commerce or otherwise work with goods that have been moved in or produced for commerce. (*Id.* ¶ 30). Menexas and Steinberger are both owners and officers of Bay Terrace with power to "hire and fire employees . . . , establish and pay their wages, set their work schedule, and maintain[ ] their employment records." (*Id.* ¶¶ 12-13, 18-21, 25).

The Complaint alleges that Defendants failed to pay Plaintiffs for hours worked and overtime wages in violation of FLSA and NYLL, failed to provide written notice of their rate of pay in violation of NYLL, and failed to provide wage statements in violation of NYLL. (Compl. ¶¶ 66, 71, 74, 79, 82, 85). They seek a declaratory judgment, unpaid and overtime wages, liquidated damages, interest, and attorney's fees and costs. (Prayer for Relief, attached to Compl., at 10). Defendants answered the Complaint on April 19, 2018 asserting 26 affirmative defenses, none of which involved arbitration. (Answer dated Apr. 19, 2018, Dkt. No. 20, ¶¶ 87-112).[1]

---

[1] A party waives the right to arbitration under certain circumstances. *La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156,

Defendants filed their motion on October 16, 2018 seeking to compel arbitration under the FAA based on Arbitration Agreements signed by Vargas and Rivera on April 7, 2017 and December 3, 2016, respectively. (Defs.' Mot. at 3; *see* Arbitration Agreements and Waivers of Class/Collective Actions, attached as Ex. E to Defs.' Mot., Dkt. No. 25 ("Arbitration Agreements") at 2).[2] Both Agreements, which are substantively identical to each other, require the parties to "submit any and all disputes arising from their employment with Bay Terrace to binding arbitration." (Defs.' Mot. at 3; *see generally* Arbitration Agreements). In relevant part, the Agreements provide that claims subject to arbitration include those "arising under . . . the Fair Labor Standards Act[,] . . . the New York Minimum Wage Act, the New York Payment of Wages Law, any other applicable New York wage and overtime laws, . . . and any other claims . . . arising out of

---

159 (2d Cir. 2010) ("In determining whether a party has waived its right to arbitration by expressing its intent to litigate the dispute in question, we consider the following three factors: (1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice.") (quotations omitted); *see, e.g.*, *Com-Tech Assocs. v. Comput. Assocs. Int'l, Inc.*, 938 F.2d 1574, 1576, 1578 (2d Cir. 1991) ("The defendants answered on November 30, 1987 and raised six separate defenses, but failed to raise the defense of arbitration. On January 11, 1989, plaintiffs filed an amended complaint. The defendants' answer on February 9, 1989, set forth various defenses but again failed to raise the arbitration defense. . . . [T]his is one of those rare cases in which the contractual right to arbitration has been waived because of the prejudice the opposing parties have suffered as a result of the defendants' delay in seeking arbitration.") (quotations omitted). Plaintiffs do not make any waiver argument. In any event, Defendants filed their request for a pre-motion conference to make the present motion three months after commencement of the action. (*See* Letter Mot. for Pre-Mot. Conference dated Mar. 20, 2018, Dkt. No. 13).

[2] Defendants request the motion to compel arbitration be granted under Rule 12(b) of the Federal Rules of Civil Procedure in addition to the FAA. (See Defs.' Mot. at 1). However, Defendants do not clarify to which section of Rule 12(b) they are referring, nor do they seek to dismiss the Complaint; instead, they seek to stay, not dismiss, the proceedings pending arbitration, which is a procedure provided for under the FAA, not Rule 12(b).

or related to Employee's employment with, and/or the termination of his or her employment by, Employer." (Arbitration Agreements at 1). The agreements also contain a class and collective action waiver—requiring that the claims be arbitrated individually. (*Id.* at 2).[3] Any arbitration must be initiated within one year from the date the claims arose, to the extent permitted by law. (*Id.*). Upon any ruling by the arbitrator, costs and attorney's fees are to be awarded to the prevailing party, again to the extent permitted by law. (*Id.*). Defendants also request the current proceedings be stayed pending the outcome of arbitration. (Defs.' Mot. at 5).

Plaintiffs contend that the Agreements are unenforceable under FLSA and general contract principles. (*See generally* Reply in Opp'n dated Oct. 31, 2018, Dkt. No. 26 ("Pls.' Resp."); *see* Pls.' Aff., attached as Ex. A to Pls.' Resp., Dkt. No. 26 ("Rivera Aff."))[4] Defendants responded on November 6, 2018, arguing enforceability should be decided by an arbitrator and that, in any event, the agreements are enforceable. (Reply in Opp'n to Pls.' Resp. dated Nov. 6, 2018, Dkt. No. 27 ("Defs.' Reply")).

## DISCUSSION

In a contractual dispute implicating interstate commerce, an arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *All. Bernstein Inv.*

---

[3] At no point have Plaintiffs indicated that they actually intended to prosecute the case as a collective or class action.

[4] Under the parties' proposed briefing schedule ordered by the Court, this response was one day late. (*See* Order dated Sept. 25, 2018). Further, Rivera signed and dated his affidavit as October 31, 2016, but the affidavit was notarized on October 31, 2018. (*See* Rivera Aff.). Because October 31, 2016 was over a year before the Complaint was filed, this date appears to be a scrivener's error.

*Research & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 125 (2d Cir. 2006) ("[T]he Federal Arbitration Act (the 'FAA') creates a 'body of federal substantive law of arbitrability' applicable to arbitration agreements . . . affecting interstate commerce.") (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).[5] Section 2 of the FAA reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001); *see Man Fong Wong v. 1st Disc. Brokerage, Inc.*, No. 10-CV-1487 ENV, 2011 WL 1298857, at *2 (E.D.N.Y. Jan. 6, 2011) ("The Federal Arbitration Act . . . establishes a 'federal policy favoring arbitration,' requiring federal courts to 'rigorously enforce agreements to arbitrate.'") (quoting *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987)), *report and recommendation adopted*, 2011 WL 1235756 (Mar. 31, 2011).

> Parties may generally shape [arbitration] agreements to their liking by specifying with whom they will arbitrate, the issues subject to arbitration, the rules by which they will arbitrate, and the arbitrators who will resolve their disputes. Whatever they settle on, the task for courts and arbitrators at bottom remains the same: to give effected to the intent of the parties.

*Lamps Plus, Inc. v. Varela*, --- S. Ct. ---, 2019 WL 1780275, at *5 (Apr. 24, 2019) (quotations and citations omitted).[6]

---

[5] "The parties do not dispute that the agreement at issue here affects interstate commerce and, accordingly, there is no question that the FAA applies." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010).

[6] Under the FAA, a party may petition the court "for an order directing . . . arbitration [to] proceed in the manner provided for in [an] agreement," and once the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, [it] shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Defendants request an order under Section 4 compelling the parties to arbitrate. (Defs.' Mot. at 1).

5

Because arbitration agreements are subject to the same principles as other contracts, "a party may be compelled to arbitrate a dispute only to the extent he or she has agreed to do so." *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 569 (S.D.N.Y. 2009) (citing *Bell v. Cendant Corp.*, 293 F.3d 563, 566-67 (2d Cir. 2002)); *see also Bynum v. Maplebear Inc.*, 160 F. Supp. 3d 527, 533-34 (E.D.N.Y. 2016) ("Arbitration is a matter of contract. When enforcing an arbitration agreement, as with any other contract, the parties' intentions control.") (quotations and citations omitted). Thus, "'[g]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements' in accordance with § 2 of the FAA." *Nayal*, 620 F. Supp. 2d at 570 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

Resolution of the present motion requires application of the Supreme Court's decision in *Rent-A-Center, West, Inc. v. Jackson.* 561 U.S. 63 (2010). In *Rent-A-Center*, the Supreme Court explained that there were two types of challenges to arbitration agreements: the first type challenges "'specifically the validity of the agreement to arbitrate,'" while the second challenges "'the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.'" *Id.* at 70 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)).

"If a party challenges the validity . . . of the precise agreement to arbitrate at issue,"—that is, makes the first type of challenge—"the federal court must consider the challenge before ordering compliance with that agreement." *Id.* at 71. However, parties may delegate that question of whether the arbitration provision is enforceable for

6

decision by the arbitrator. *Id.* at 71-72. That is, courts are generally tasked with deciding whether a dispute is arbitrable, unless "the parties agreed to submit the question of arbitrability itself to arbitration." *All. Bernstein Inv. Research & Mgmt.*, 445 F.3d at 125; *see Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) ("The question of whether the parties have agreed to arbitrate, *i.e.*, the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise."). And a federal court must honor that contractual choice under Section 2 of the FAA, unless the party challenging arbitration challenges the delegation provision specifically. *Rent-A-Center*, 561 U.S. at 72 ("Unless [plaintiff] challenged the delegation provision specifically, we must treat it as valid . . . and must enforce it . . . , leaving any challenge to the validity of the Agreement as a whole for the arbitrator.); *McCoy v. Dave & Buster's, Inc.*, No. 15-CV-465, 2018 WL 550637, at *7 (E.D.N.Y. Jan. 24, 2018).

The Arbitration Agreements delegate the question of arbitrability, *i.e.* the question of whether the agreements to arbitrate are enforceable, for the arbitrator to decide. The parties "agree that any and all controversies, disputes, or claims arising out of Employee's employment at [Bay Terrace], whether contractual, in tort, or based upon statute, shall be exclusively decided by binding arbitration held pursuant to the [FAA]" and that "[t]he parties . . . waive any right to litigate such controversies." (Arbitration Agreements at 1). This language—requiring that *all* controversies related to employment, which necessarily includes all controversies related to the arbitration agreement—delegates questions of arbitrability to the arbitrator. *See, e.g.*, *Man Fong Wong*, 2011 WL 1298857, at *5 ("The arbitration provision at issue here is extremely broad and states that it covers '*all controversies*' that may arise between the parties[.]

7

By covering 'all controversies', the arbitration clause necessarily governs threshold issues[.]") (citations omitted). Plaintiffs have offered no argument to the contrary and ignore the Defendants' invocation of this delegation provision. (*See generally* Pls.' Resp.).

The Arbitration Agreements also provide that arbitration "shall be administered by a panel of three arbitrators agreed upon by the parties pursuant to the [American Arbitration Association ('AAA')'s] Employment Arbitration Rules and Mediation Procedures[.]" (Arbitration Agreements at 1). "[W]hen . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (citing *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 122 (2d Cir. 2003) and *PaineWebber Inc. v. Bybyk,* 81 F.3d 1193, 1202 (2d Cir. 1996)); *see also Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 423 (E.D.N.Y. 2014) ("Where the parties' agreement to arbitrate includes an agreement to follow a particular set of arbitration rules—such as the AAA Rules—that provide for the arbitrator to decide questions of arbitrability, the presumption that courts decide arbitrability falls away, and the issue is decided by the arbitrator.") (quotations and alterations omitted).

The AAA rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." American Arbitration Association, Employment Arbitration Rules & Mediation Procedures, Rule 6(a) (2009), www.adr.org/sites/default/files/EmploymentRules_Web2119.pdf (last visited May 9, 2019). This also leads the Court to conclude that the enforceability of the Arbitration

Agreements has been delegated to the arbitrator for decision. *See, e.g., McCoy*, 2018 WL 550637, at *7 ("[T]he arbitration agreement incorporates the Employment Arbitration Rules of the [AAA.] . . . Accordingly, plaintiff and D&B agreed to arbitrate disputes regarding the enforceability of the arbitration agreement."); *Lismore v. Société Générale Energy Corp.*, No. 11-CV-6705, 2012 WL 3577833, at *5 (S.D.N.Y. Aug. 17, 2012) ("[A] party who signs 'a contract containing an arbitration clause and incorporating by reference the AAA rules . . . cannot [later] disown its agreed-to obligation to arbitrate *all* disputes, including the question of arbitrability.' The 2010 Written Agreement's arbitration clause incorporates by reference the AAA's Rules for the Resolution of Employment Disputes [and thus] delegates to arbitrators the decision on arbitrability, including the question of the agreement's continued existence and viability.") (citations omitted) (quoting *Contec Corp.*, 398 F.3d at 208).

   Nonetheless, the Court must next decide whether Plaintiffs' challenges are directed to the delegation clause specifically. *See Rent-A-Center*, 561 U.S. at 72. Plaintiffs, although disputing the overall validity of the Arbitration Agreements, do not dispute that the Agreements delegate the question of enforceability to the arbitrator. Nor do they argue that the delegation provision is itself invalid for any particular reason. Instead, Plaintiffs make a series of general attacks on the Arbitration Agreements, making no mention of the delegation provision. For example, they assert that the Agreements are invalid because the Plaintiffs do not speak English, that they were given an unconscionable choice between signing the agreement or not being able to work, and that the Agreement contains provisions that are inconsistent with FLSA. Nowhere do Plaintiffs even mention the delegation provision. (*See generally* Pls.' Resp.). Plaintiffs consistently argue that certain *other* provisions—namely those shortening the statute of

9

limitations and restricting FLSA's fee-shifting provisions—"must render the *entire agreement* unenforceable." (*Id.* at 3 (emphasis added); *see also id.* (arguing the provision stating "parties consent to jurisdiction of" New York state and federal courts for equitable and injunctive relief undermines the Agreements *in their entirety*)). None of these arguments address whether it is appropriate for the arbitrator to decide the merits of enforceability or for the Court to do so. But the law is clear that absent a specific challenge, the delegation of the questions of unconscionability and enforceability of an arbitration agreement to an arbitrator must be upheld. *See Rent-A-Center*, 561 U.S. at 72-74 (determining that unconscionability challenges to portions of an arbitration agreement—other than the delegation provision—constitute challenges to the agreement as a whole and thus should be left to the arbitrator); *McCoy*, 2018 WL 550637, at *8 ("Like in *Rent-A-Center*, plaintiff fails to even mention the delegation clauses in either of his opposition briefs. Moreover, assuming plaintiff challenges the arbitration agreement as unenforceable for the reasons discussed *supra*—inequality of bargaining power, limited damages or remedies for plaintiff's employment-related claims, and insufficient discovery—these challenges do not directly apply to the delegation clauses.") (citation omitted).[7]

      The fact that each of the agreements here is in its entirety a contract regarding arbitration, and contains no other provision related to employment (such as wage rates

---

[7] Plaintiffs also argue the unconscionable provisions cannot be severed from the Arbitration Agreements and thus render the Agreements unenforceable, (Pls.' Resp. at 3); this confirms that Plaintiffs' challenge is to the entirety of the Agreements. *See, e.g.*, *Rent-A-Center*, 561 U.S. at 75 ("[Plaintiff argued] that under state law the unconscionable clauses could not be severed from the arbitration agreement. The point of this argument . . . is that the Agreement *as a whole* is unconscionable[.]") (citation omitted).

or dates of employment), does not by itself permit this Court to consider the question of arbitrability. *See Rent-A-Center*, 561 U.S. at 72 ("In this case, the underlying contract is itself an arbitration agreement. But that makes no difference. . . . Accordingly, unless Jackson challenged the delegation provision specifically, we must treat it as valid . . . , leaving any challenge to the validity of the Agreement as a whole for the arbitrator.").[8] The challenges made by Plaintiffs must, therefore, be addressed by an arbitrator in the first instance. *McCoy*, 2018 WL 550637, at *8 ("[B]ecause plaintiff does not separately challenge the enforceability of the delegation clauses, the court treats the delegation clauses as valid and delegates any enforceability challenges to the arbitrator.").[9]

\*            \*            \*

Defendants have asked the Court to stay this action pending arbitration. (*See* Defs.' Mot at 1; Defs.' Reply at 1).[10] The FAA provides that the court, "upon being

---

[8] The Court cannot conclude that the greater includes the lesser in this context. That is, it cannot and does not conclude that by making a general challenge to the Arbitration Agreements, Plaintiffs are specifically challenging the delegation provision. *See Rent-A-Center*, 561 U.S. at 72 (holding that a general attack on an arbitration agreement does not also constitute a specific challenge to the delegation provision within that agreement). And, as discussed, Plaintiffs do not even mention the delegation provision and ignore Defendants' arguments about *Rent-A-Center*.

[9] Plaintiffs make a separate argument that "the shortened limitations period . . . is unenforceable under the effective vindication exception," which Plaintiffs argue is a "judge-made exception [that] allows courts to invalidate agreements that prevent the effective vindication of a federal statutory right." (Pls.' Resp. at 2 (quoting *Sutherland v. Ernst & Young*, 726 F.3d 290, 298 (2d Cir. 2013)) (quotations and alterations omitted)). This could be interpreted as either a challenge to the Agreements as a whole or to the statute of limitations provision specifically; in any event, it is certainly not a challenge to the delegation provision and thus not for the Court to decide.

[10] Defendants also request, at the end of their reply brief, that the Court "deny Plaintiffs' motion for class certification." (Defs.' Reply at 3). The Court does not interpret anything in Plaintiffs' papers as having requested class certification, and there are no such motions on the docket. Therefore, this request is denied.

11

satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . , shall on application of one of the parties stay the trial of the action until such arbitration has been had."  9 U.S.C. § 3; *see Bynum*, 160 F. Supp. 3d at 534 ("If a court is satisfied that a matter is arbitrable under an arbitration agreement, section 3 of the FAA provides for a stay of legal proceedings.").  All of Plaintiffs' claims are arbitrable, including the issue of arbitrability itself, and thus the Court stays the entire action pending the outcome of arbitration.  *See, e.g., Victorio v. Sammy's Fishbox Realty Co., LLC*, No. 14-CV-8678, 2015 WL 2152703, at *19 (S.D.N.Y. May 6, 2015) ("Upon Defendants' application, this Court will stay Plaintiffs' lawsuit pending the outcome of arbitration.").[11]

## CONCLUSION

For the reasons described above, the Court grants Defendants' motion to compel arbitration pursuant to 9 U.S.C. § 4 and hereby stays this action pursuant to 9 U.S.C. § 3.

SO ORDERED.

*/s/ Sanket J. Bulsara* May 10, 2019
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

---

[11] "Courts have discretion to dismiss—rather than stay—an action when all of the issues in it must be arbitrated."  *Milgrim v. Backroads, Inc.,* 142 F. Supp. 2d 471, 476 (S.D.N.Y. 2001); *Nayal*, 620 F. Supp. 2d at 574 ("[W]here all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings.") (quotations omitted).  However, this is not relief Defendants seek in this case.